GREAT NORTHERN RY. CO. v. McLAUGHLIN.

(Circuit Court of Appeals, Ninth Circuit.   October 31, 1895.)

No. 220.

1. PRACTICE ON APPEAL—OBJECTION NOT RAISED BELOW.
When a demurrer to a complaint, on the ground that it does not state facts sufficient to constitute a cause of action, has been filed, but, without calling for any action thereon, the defendant, on the same day, files an answer, upon which the case is tried, such defendant cannot urge any objections to the complaint for the first time in an appellate court, though the statement of the cause of action is in some respects imperfect.

2. EVIDENCE—KNOWLEDGE OF CONDITIONS.
It is not error to permit a plaintiff, testifying on his own behalf in an action for personal injuries caused by negligence, to answer the question whether, if he had known the condition of certain appliances, the defects of which were alleged to have caused the accident, he would have continued to work with them.

3. CHARGING JURY—LANGUAGE OF SPECIFIC REQUESTS.
Where the trial judge has, in his own charge, fully, fairly, and correctly instructed the jury upon every material issue raised by the pleadings and evidence, the judgment in the case will not be reversed for his refusal to give any instructions, however correct, in the language requested by counsel.

4. NEGLIGENCE—QUESTION FOR JURY.
In an action against a railway company, by one of its employés, for damages for injuries caused by a steel rail falling on the plaintiff while he was engaged, with others, in loading rails upon a car in the railway company's yard, there was evidence tending to prove that one J. was the foreman of the yard, hired and discharged the workmen, and directed their work; that on the day of the accident he directed plaintiff to go to a certain gang, and help load rails upon the cars; that before this work was begun plaintiff went to fill an oil can which was needed about the work; that while he was gone J. picked out the skids to be used in the work from a number which were lying in the yard and had previously been used in the work; that the workmen pointed out to J. that one of the skids was too short, and was unsafe, and they objected to using it; that J. examined the skid, and ordered the workmen to go on and use it, as he was in a hurry; that on plaintiff's return with the oil can he went to work with the others, knowing nothing of the defect in the skid; that the skid very soon fell from its place, and caused a rail to fall upon plaintiff, injuring him severely. *Held*, that it was not error to refuse to instruct the jury to find a verdict for the defendant, but that the questions whether J. was acting as a vice principal of the railway company, and whether plaintiff was injured through the negligence of his fellow servants, or through a risk assumed by him, or through the negligence of the railway company, were for the jury.

5. PRACTICE ON APPEAL—REVIEW OF EVIDENCE.
The court of appeals has no authority to review the evidence in order to determine whether or not the verdict of a jury was contrary to the weight thereof.

In Error to the Circuit Court of the United States for the Eastern Division of the District of Washington.

This is an action at law to recover damages for personal injuries received by McLaughlin, the defendant in error, while in the employ of the railway company, plaintiff in error. The action was commenced in the state court, and thereafter removed, on motion of the railway company, to the United States circuit court. The complaint alleges, in substance, that McLaughlin, on the 5th of November, 1892, was in the employ of the railway company, engaged in loading steel rails in the material yard of the company near Spokane; that he and his colaborers were working under the direct charge, supervision, and control of the superintendent of the yard in putting iron and steel rails upon the flat cars of the railway company; that while he and his colaborers were pushing a steel rail upon two steel or iron skids one of the skids slipped, and fell down, causing the rail to fall back upon him, striking him upon the thighs near the abdomen, and throwing him backward across a pile of angle bars and over and upon a pile of steel rails, bruising and wounding his abdomen and thighs; that the steel rail rebounded, and struck him upon the left leg, immediately above the ankle, lacerating and wounding his leg and injuring the bone; that in falling back he was thrown with great force, coming in contact with the steel rails, so as to injure and bruise his right hip and kidney, and for a long time paralyzed his legs and hips; that all of said injuries caused him great bodily pain; that said injuries were caused by the gross negligence and carelessness of the railway company, its agents and servants, and without fault on his part; that the injuries were caused by the use of improper skids for the purpose of loading steel rails upon the cars, and the improper and negligent placing of the same by the railway company, its agents and servants; that he was totally ignorant of the danger in which he was placed, and of the imperfect skids used for loading the rails, and of the negligent and careless way in which the skids were placed. The injuries which McLaughlin received, and the expenses incurred by reason thereof, are particularly stated. After the removal of the cause to the circuit court, the railway company filed a demurrer to the complaint upon the ground that it does not state facts sufficient to constitute a cause of action. On the same day, without any action being asked for or taken upon the demurrer, the railway company filed its answer, admitting the employment of McLaughlin, and that he was injured while in such employ; but denied that he was under the direct charge, supervision, or control of any superior officer of the company, and, for affirmative defense, alleged that it furnished due and proper means and appliances for the loading of its cars; that the injuries which McLaughlin received were caused by his own unskillfulness and negligence and that of his colaborers, who were fellow servants, in using the means and appliances furnished by the company; and that he was not injured by any of its fault or negligence. Upon the issues thus made the cause was tried before a jury, and a verdict rendered in favor of McLaughlin for $5,000. The railway company moved the court for a new trial, which was denied.

The testimony at the close of the trial tended to show that a Mr. Tubby was the general superintendent and storekeeper of the yards for the railway company; that one Johnson was the general foreman of the yard; that he hired and discharged the workmen and directed and controlled their movements, and had supervision of the loading and unloading of the iron and steel rails in the yard; that on the morning of the injury to McLaughlin there were three or four gangs of men engaged in loading cars at the same time, each gang consisting of from eight to twelve men, and each having a boss or head workman; that there were eight or ten pairs of skids lying along the track and scattered about in the yard, of different lengths, which had been used off and on for about two years; that some were shorter than others; that they were ordinary steel rails, some of them having fishplates or angle bars fastened on one end and bolted, and when used one end of the skid was placed on the side of the flat car and the other end rested on the pile of steel or iron to be loaded; that the workmen

generally selected the skids for use and put them in place; that the iron pile grows lower as the rails are loaded, and the load on the car grows higher, and the angle of the skids steeper; the rails are slid up the skids by sticks used by the workmen; that McLaughlin had been employed in the business of loading the cars in this manner for about two weeks, and had, at different times, assisted in putting up the skids; that on the morning of the injury Johnson directed him to go to Collins' gang, and help them load the car; that he went there, and some one said, "The oil can is dry;" that he took the can, and went away, filled the can with oil, and upon his return a fellow workman oiled the skids; that he went to work, with others, shoving up the rails on the skids; that when the third or fourth rail was partially moved about six or seven feet upon the skids, the one furthest from him fell, the rails dropped, and he received the injuries set forth in the complaint; that while McLaughlin was absent Johnson picked out the skids to be used on this car, and directed the workmen present to put them up; that when the skids were brought to the car the workmen hesitated, and objected to putting them up, on the ground that one skid was shorter than the others, and told Johnson they were not safe; that Johnson then examined the skids, and saw they were of different lengths, and thereupon he said to the men that the skids were all right, and ordered them to go ahead, and put them up, and go to work loading the car, as he was in a hurry to have it loaded; that the cause of the injury was occasioned by the defect in the skid that fell being too short, and a little crooked; neither of the skids had fish plates attached thereto; that McLaughlin had no knowledge or information of the defect in the skids, did not know their lengths, or the manner in which they were put up, or whether they were fit for the purpose for which they were used; that he did not examine them, and had no reasonable opportunity to do so, and he testified that he would not have engaged in the work of loading the car had he known that either of the skids was imperfect; that it was the shortest skid that fell, it being seven or eight inches shorter than the others, and unfit to use for that purpose; that Collins was in charge of the gang when the rail fell, Johnson having gone away.

There was more or less conflict in the evidence as to whether the injury was caused by the defective skid, or by the negligence of the workmen in irregularly pushing up the rails on the skids. There was also some conflict as to Johnson's authority to hire and discharge men, and as to whether he was a vice principal of the railway company or a fellow servant with McLaughlin.

Jay. H. Adams and C. Wellington, for plaintiff in error.

H. M. Herman, J. W. Feighan, and S. A. Wells, for defendant in error.

Before McKENNA and GILBERT, Circuit Judges, and HAW-LEY, District Judge.

HAWLEY, District Judge (after stating the facts). 1. It is contended that the complaint does not state facts sufficient to constitute a cause of action. This contention, in our opinion, is not well taken. It does not affirmatively appear from the allegations of the complaint that the injury of which McLaughlin complains was caused by the negligence of his fellow servants. The complaint avers that the injury was caused by the gross negligence of the railway company in the selection and use of improper skids by its superintendent and agent in loading steel rails upon its cars. It is subject to criticism, and is, perhaps, somewhat ambiguous and uncertain. It, however, states a cause of action, imperfect in some

respects; but, inasmuch as no ruling was ever called for upon the demurrer filed thereto, the railway company cannot urge any objections to such defects for the first time in the appellate court.

2. It is claimed that the court erred in allowing McLaughlin to answer the following question, propounded to him as a witness in his own behalf: "Q. Now, you may tell the jury whether or not, if you had known the condition of the skid,—the manner in which it was put up, its length and size,—whether you would have gone on with the work as you did." This was objected to as immaterial, irrelevant, and incompetent. The objection was overruled, and the witness answered: "No, sir. I would not, under any circumstances, or no man' else." The question was pertinent and proper. The last sentence of the answer was irrelevant, and not responsive to the question, and might have been stricken out if any motion had been made to that effect; but, in any event, this matter is not of sufficient gravity to authorize this court to reverse the case.

3. Objection is made to the refusal of the court to give instructions 3 and 5 asked by the counsel for the railway company. These instructions read as follows:

"(3) If you find from the evidence that the man Johnson had power to hire and discharge employés and superintend and direct their work, this will not constitute him a vice principal or representative of the company in respect to any duty which the plaintiff or his fellow servants under their employment were to perform."

"(5) If you find from the evidence that the cause of the injury received by the plaintiff was the slipping of the lower end of the skid from its support, and that such slipping was caused by the skid being forced up from its lower support by the action of the rail on the face thereof as the same was being loaded by the plaintiff and his colaborers, then the defendant is not liable."

In considering this assignment of error we must not lose sight of the fact that the court below, in its own charge, fully, fairly, and correctly instructed the jury upon every material issue raised by the pleadings and the evidence. No exception was taken to this charge, which, in its entirety, was as favorable in every respect to the railway company as the law would warrant, or the facts justify. Under these circumstances it is manifest that this court would not be justified in reversing the case on the ground of the refusal of the court to give the instructions asked for by counsel, even if they contained correct principles of law.

In Railway Co. v. McCarthy, 96 U. S. 258, 265, the court said:

"It has been repeatedly determined by this tribunal that no court is bound to give instructions in the forms and language in which they are asked. If those given sufficiently cover the case, and are correct, the judgment will not be disturbed, whatever those may have been which were refused. We have examined the charge of the learned judge who tried the case below, and are entirely satisfied with it. It was full, clear, and unexceptionable. It submitted the case well and fairly to the jury, and was quite as favorable to the company as the company had a right to demand."

See, also, Railroad Co. v. Horst, 93 U. S. 291; Railroad Co. v. McDade, 135 U. S. 575, 10 Sup. Ct. 1044; Ayers v. Watson, 137 U. S. 601, 11 Sup. Ct. 201; Railroad Co. v. Winter's Adm'r, 143 U. S. 75, 12 Sup. Ct. 356.

It is proper to add that the substance of the fifth instruction was given in the charge of the court. The principle sought to be enunciated in the third instruction will be referred to in the consideration of the next assignment of error.

4. Did the court err in refusing to instruct the jury, at the close of the testimony, to find a verdict in favor of the railway company? This motion was asked for upon four distinct grounds: (1) That, under the facts disclosed by the testimony, it is apparent that the injury was caused by the negligence of a fellow servant; (2) that the railway company is not liable to McLaughlin for the negligence of the foreman, Johnson; (3) that, under the proofs, McLaughlin assumed the risks incidental to his employment, and the evidence disclosed that this was one of the risks; (4) that whatever defect existed in the skids was open and apparent, and that McLaughlin had the same or equal means of knowledge thereof with the company, and the same opportunity it had to discover and observe the defect; and in his employment it was a part of his duty to assist in the placing of the skids in position, and to see that they were properly placed. It is well settled by the repeated decisions of this court and of the supreme court of the United States that no cause should ever be withdrawn from the jury unless the conclusion from the facts necessarily follows as a matter of law that no recovery could be had upon any view which could reasonably be drawn from the facts which the evidence tends to establish. Railway Co. v. Novak, 9 C. C. A. 629, 61 Fed. 573, 584, and authorities there cited; Mining Co. v. Whelan, 12 C. C. A. 225, 64 Fed. 466; Gardner v. Railroad Co., 150 U. S. 349, 361, 14 Sup. Ct. 140; Railroad Co. v. Everett, 152 U. S. 107, 113, 14 Sup. Ct. 474. In the light of this rule the questions involved in the ruling of the court will be examined. The contention of counsel that because McLaughlin was employed to help load and unload the cars it was his duty, and the duty of his fellow servants, to select the skids to be used for that purpose, and that the railway company had performed its duty when it placed proper skids in the yard that might have been selected for that purpose, ignores some of the conditions which the testimony tended to establish, and for this reason it should not be sustained. Let us suppose, for the purpose of illustrating the principle contended for by counsel and embodied in the third instruction, heretofore referred to, that the master was an individual, instead of a railroad corporation, it would of course follow, from the argument of counsel, that if the individual master himself selected the skids, the tools and appliances with which his workmen were to load and unload the cars, and they were defective and dangerous, and known to be unsafe by him, and the condition of the skids was wholly unknown to the employé, who was injured by their use, this employé could not recover because, in the line of the general duty of the employé, he might have been called upon to select the skids himself. Is not this going at least one step too far? The fair inference to be drawn from the testimony is that, if the duty of selecting and placing the skids had been left to the workmen, as it might, perhaps, with safety, have been, they would have selected another and longer skid,

and the accident would not have occurred. The facts of the present case are distinguishable in several respects from the cases cited by counsel in support of their contention. For instance, in McGinty v. Reservoir Co. (Mass.) 29 N. E. 510, the action was brought to recover damages for injuries received by a servant, occasioned by the falling of a derrick. The post to which one of the guy ropes had been attached pulled up, and caused the injury. The post was set by the workmen under the direction of the superintendent. There was no defect or insufficiency in the derrick or the guy ropes or the post or the piece of timber used to make the post more secure. The derrick was changed from place to place, as occasion required. The moving, adjusting, and securing it were duties required of the workmen. It was their duty to put down the posts, and the injury which occurred from any negligence in these respects could not be charged to the master. The court in that case properly held that the superintendent of the master, in assisting in these duties, was only a fellow servant as between himself and the workmen, and that the master would not be liable for his negligence. Is it not safe to say that the conclusion announced by the court in that case would have been different if there had been a defect in the derrick, or the other appliances connected therewith, known to the superintendent, and he had ordered the men to use it, and a servant, without knowledge of the defect, or without having the ordinary means of discovering it, had been injured by reason of such defect? If the skids in the present case had not been defective, and Johnson, the foreman, had voluntarily come forward and assisted in selecting and placing the skids, no defects being known to him, or in assisting to push up the steel rails, and in so doing was negligent in his work, the master would not be held liable for Johnson's negligence in that respect, because his acts would be simply those of a fellow servant between himself and the workmen. It was the duty of the railway company to use ordinary care in the selection of suitable skids and appliances, and to provide a reasonably safe place for the laborers to work in loading its cars. This positive duty, which the master in all cases owes to an employé, does not go to the extent of a guaranty of safety; but it does require that reasonable precautions should be taken to secure safety. It matters not to the employé by whom that safety is secured or the reasonable precautions taken. But an employé in all cases has the right to look to the master for the fair discharge of these duties; and if the master, instead of discharging it himself, sees fit to have the matters attended to by others, that does not in any manner change the measure of obligation to the employé.

The court, in the present case, after correctly charging the jury in relation to the risks assumed by the servant in the course of his employment, said:

"The employer, however, by his contract, assumes responsibility for subjecting the employé unnecessarily to any extraordinary or unusual hazards. He assumes the duty of supplying materials and appliances which are reasonably safe and fit for use. His duty is to exercise the same degree of care for the safety of his employé that a person of ordinary prudence and care usually exercises for his own safety; and negligence which ren-

ders him liable to the employé·is neglect to perform that duty, to exercise that degree of care. So that, if you should determine that Mr. Johnson was negligent, and his negligence caused this injury, and that he was a vice principal, you will have to take into account the degree of negligence in order to determine whether it was such negligence as gives this plaintiff a right of action against that railroad corporation. If it was neglect to exercise as much care for the safety of the men who were there employed in loading the rails upon the car as a person of ordinary care and prudence should exercise for his own safety, the defendant is liable; but the defendant would not be liable for the failure on Mr. Johnson's part to prevent an injury which could only have been prevented by exercising extraordinary and unusual care and pains."

The controlling question often turns more upon the character of the act performed than on the title of the officer or agent of the master, and of the relations of the workmen to each other. When Johnson's attention was called by the workmen to the fact that the skids were of unequal length, and unsafe, it was his duty, in relation to his position with the railway company, to have either procured other and safe skids, or directed the workmen to do so. Instead of that, he ordered the men to put up the defective skids. They obeyed his orders. He was their boss, and in giving the orders and directions which he did was acting for their master; and it was their duty to obey, or quit work. McLaughlin was not present. He knew nothing of the defects in the skids, and had no reasonable opportunity to inspect or examine them. They were in place, and the men at work, when he returned with the oil. He went to work in the line of his duty to help load the car. Under all the facts and circumstances of this case, he had the right to assume that the railway company had done its duty in providing safe appliances; and, having no knowledge, or the ordinary means of obtaining knowledge, as to the dangerous and unsafe character of the skids, it cannot be fairly said that he was bound to assume the risks of their being unsafe.

In Railway Co. v. Daniels, 152 U. S. 684, 689, 14 Sup. Ct. 756, one of the wheels of a car in a freight train, which had a crack in it 12 inches long, filled with grease, rust, and dirt, was inspected by a servant of the railroad company at the inspecting station, and was by such servant permitted to be used, by reason of which another servant of the company, who was ignorant of the defect, was injured. The court said:

"There can be no doubt that under the circumstances of the case at bar the duty rested upon the company to see to it, at this inspecting station, that the wheels of the cars in this freight train, which was about to be drawn out upon the road, were in safe and proper condition; and this duty could not be delegated so as to exonerate the company from liability to its servants for injuries resulting from the omission to perform that duty, or through its negligent performance."

This general principle, in one form or another, has been often announced by this court. Southern Pac. Co. v. Lafferty, 6 C. C. A. 474, 57 Fed. 537; Railway Co. v. Novak, 9 C. C. A. 629, 61 Fed. 582; Mining Co. v. Whelan, 12 C. C. A. 225, 64 Fed. 465, and authorities there cited.

Whether the evidence proved that McLaughlin was working under the immediate charge and direction of Johnson, and that John-

son was acting as a vice principal of the corporation, or whether McLaughlin was injured by the negligence of the railway company or by the negligence of his fellow servants who were not representing the master, or was himself guilty of any contributory negligence, were, under the facts, questions which the court, under proper instructions as to the law, had the right, and it was its duty, to submit to the jury. Railroad Co. v. Behling, 6 C. C. A. 681, 57 Fed. 1038; Mining Co. v. Whelan, supra; Railroad Co. v. Foley, 3 C. C. A. 589, 53 Fed. 463, and authorities there cited; Coal Co. v. Richmond, 7 C. C. A. 485, 58 Fed. 759; Railroad Co. v. Powers, 149 U. S. 45, 13 Sup. Ct. 748, and authorities there cited; Lincoln v. Power, 151 U. S. 436, 14 Sup. Ct. 387; Railroad Co. v. Mackey, 157 U. S. 72, 83, 15 Sup. Ct. 491.

The court did not err in overruling the motion made by the railway company.

5. In the last assignment of error it is claimed that the verdict of the jury is contrary to the law as given in the charge and instructions of the court. This might be, and probably was, urged as a ground why the motion for a new trial should have been granted; but it is a matter over which we, as an appellate court, have no control. Having decided that the court did not err in submitting the case to the jury, we cannot be called upon to review the testimony, and to decide whether or not the verdict was in accordance with the weight of evidence, or whether, under the instructions, the verdict should have been rendered for the railway company. In Mills v. Smith, 8 Wall. 32, the court, in disposing of a similar question, said:

"The counsel, in their arguments in this case, seem to have forgotten that this court have no right to order a new trial because they may believe that the jury may have erred in their verdict on the facts. If the court below have given proper instructions on the questions of law, and submitted the facts to the jury, there is no further remedy in this court for any supposed mistake of the jury."

In Woodruff v. Hough, 91 U. S. 596, 603, the court said:

"If there was any error, it was committed by the jury, and not by the court. It is only another one of those cases, so common from that circuit, in which, with the whole charge of the court and much of the testimony in the bill of exceptions, this court is expected to retry the case as if it were both court and jury. Our repeated refusal to do this will be adhered to, however counsel may continue to press on our attention the mistakes of juries. They are beyond our jurisdiction."

The relief from such mistakes, if any are made, is to be sought in applications to the trial court for a new trial. The verdict of the jury is not omnipotent; not final. It takes 13 men—the jury and the judge—to decide what the verdict shall be. The trial court, with full knowledge of all the facts, and the opportunity afforded it to observe the manner, appearance, and demeanor of the witnesses, and of observing all their acts and conduct affecting their credibility and the weight that should be given to their testimony, is clothed with the authority to grant or refuse a new trial. It is the duty of the trial court, when the verdict is so excessive as to indicate passion or prejudice upon the part of the jury, or where

the verdict is clearly against the weight of evidence, or contrary to the law as given in its instructions, to set the verdict aside. But from the action of the court in granting or refusing a new trial (under our system and practice) there is no appeal. Railroad Co. v. Charless, 2 C. C. A. 380, 51 Fed. 562, and authorities there cited. As was said by the court in Insurance Co. v. Ward, 140 U. S. 77, 91, 11 Sup. Ct. 720:

"It may be that, if we were to usurp the functions of the jury, and determine the weight to be given to the evidence, we might arrive at a different conclusion. But that is not our province on a writ of error. In such a case we are confined to the consideration of the exceptions, taken at the trial, to the admission or rejection of evidence, and to the charge of the court and its refusals to charge. We have no concern with questions of fact, or the weight to be given to the evidence, which was properly admitted."

See, also, Railroad Co. v. Winter's Adm'r, 143 U. S. 61, 75, 12 Sup. Ct. 356; Lincoln v. Power, 151 U. S. 436, 14 Sup. Ct. 387.

The judgment of the circuit court is affirmed.