AMERICAN TRADING CO. v. NORTH ALASKA SALMON CO.

(Circuit Court of Appeals, Ninth Circuit. February 11, 1918. Rehearing Denied April 1, 1918.)

No. 2974.

1. APPEAL AND ERROR ⊜1003—REVIEW—WEIGHT OF EVIDENCE.
On writ of error, assignment that the verdict is contrary to the evidence presents nothing for review; there having been no request that the jury be instructed to return a verdict for the plaintiff in error on the ground of the absence of any evidence to the contrary, for the appellate court cannot weigh the evidence.

2. TRIAL ⊜260(1)—INSTRUCTIONS—REFUSAL.
The refusal of requested instructions, substantially covered by those given, is not error.

3. TRIAL ⊜252(13)—INSTRUCTIONS—EVIDENCE TO SUPPORT.
Where plaintiff disposed of some of the canned salmon purchased from defendant for a valuable consideration, which it retained, plaintiff's instruction in an action against defendant on account of the defective quality of the salmon, based on the hypothesis that the whole of the salmon purchased was worthless and unfit for food, is properly refused.

4. TRIAL ⊜56—EXCLUSION OF CUMULATIVE EVIDENCE.
Where plaintiff had already proven by competent witnesses that much of the salmon purchased from defendant had been condemned and ordered destroyed as unfit for food, and that fact was not denied by defendant, the exclusion of the records of judicial proceedings wherein the destruction was ordered was proper; it being unnecessary to burden the record with additional evidence of that fact.

5. SALES ⊜176(4)—ESTOPPEL—INSPECTION.
Where a seller of do-over salmon guaranteed that it should equal the pack of previous years, and the buyer, though the contract provided for inspection before delivery, and that after swells and rusty tins were removed no reclamation of any nature should be allowed, made no extensive inspection, despite its knowledge that a large percentage of do-over salmon is always bad, the seller is not estopped from defending on the ground of the buyer's failure to inspect the salmon before receiving it, it not appearing that the two cases sent the buyer at its expense for issuance as samples to customers for resale were not fair samples, for such estoppel must be on the theory that defendant made misrepresentations, either with fraudulent intent or so carelessly and negligently as to amount to constructive fraud.

6. APPEAL AND ERROR ⊜977(5)—REVIEW—DENIAL OF NEW TRIAL.
In federal courts, the refusal of the trial judge to set aside a verdict or grant a new trial is not subject to review on writ of error.

In Error to the District Court of the United States for the Second Division of the Northern District of California; Wm. C. Van Fleet, Judge.

Action by the American Trading Company (Pacific Coast), a corporation, against the North Alaska Salmon Company, a corporation. There was a judgment for plaintiff for nominal damages, and it brings error. Affirmed.

The plaintiff in the court below, the plaintiff in error here, was engaged in the brokerage business, and for several years prior to 1911 had purchased the greater part of the output of do-over salmon known as the Archer brand, produced by the defendant, which was engaged in the business of canning Alaska

salmon. "Do-over" salmon is salmon which has been cooked twice, on account of prior defective cooking or defective cans. On November 16, 1911, the parties entered into a written contract for the sale by defendant to the plaintiff of all the defendant's pack of the season of 1912 of "do-over grade red Alaska salmon labeled 'Archer,' not to exceed 5,000 cases." The contract provided as follows: "Delivery is to be made within 30 days after arrival of vessels from Alaska, and goods to be paid for on presentation of warehouse receipt or delivery documents." "Archer brand of salmon to be overhauled in San Franchisco by sellers, and all swells and rusty tins to be taken therefrom, after which no 'reclamation of any nature will be allowed." "Buyers have privilege of inspecting salmon before taking delivery. Sellers guaranteeing goods to be equal to the 1911 pack." "The salmon under this contract is sold subject to being packed and safely landed in San Francisco."

The counts of the plaintiff's complaint on which the case was tried were the second and the fourth; demurrers to the others having been sustained. The second count, after setting forth the contract, alleged that as a part of the contract it was understood and agreed by the parties that said Archer brand salmon would be merchantable, edible, and suitable for human consumption, and of the condition and quality that would entitle it by law to be brought into the city and county of San Francisco, and thereafter sold; that the defendant shipped to San Francisco and delivered to the plaintiff 5,000 cases of the do-over salmon of the Archer brand, and the plaintiff received the same without inspecting or examining it, and relying on the defendant's representations and the samples which had been furnished, which samples had been examined by the plaintiff and ascertained to consist of edible salmon fit for human consumption, and merchantable, and equal in quality and condition to the 1911 pack; that shortly after the delivery to plaintiff of the 5,000 cases of Archer brand, and in reliance upon said samples and representations, and in ignorance of the actual quality and condition of said salmon, plaintiff paid defendant therefor $16,961.30, the entire purchase price thereof; that the said 5,000 cases were unmerchantable, unedible, tainted, putrid, and unfit for human consumption, and adulterated within the meaning of the Pure Food and Drugs Act of Congress of June 30, 1906 (34 Stat. 768, c. 3915 [Comp. St. 1916, §§ 8717–8728]), and the act of the Legislature of California of March 11, 1907 (St. 1907, p. 208), that at or shortly after the time of the shipment and delivery of said salmon, and prior to the time of the commencement of this action, the defendant well knew of the condition and quality of said merchandise, but has failed, neglected, and refused to return or pay the plaintiff said $16,961.30, or any part thereof. The fourth count sets forth the written contract, and the warranty therein contained that the salmon should be equal to the 1911 pack; that samples were submitted according to the custom which had prevailed between the parties for several years; that the samples examined by plaintiff were fully equal to the 1911 pack of the Archer brand, and were edible and fit for human consumption; that, relying on the defendant's representations, plaintiff accepted delivery and paid the purchase price therefor; that the salmon delivered was not equal to said samples, and that the defendant is estopped from alleging or maintaining that the plaintiff is precluded from advancing a claim for damages for breach of the contract for failure to make such claim within ten days after the removal of swells as provided for in the contract, by reason of defendant's representations respecting the samples.

The court instructed the jury in substance that the provision in the contract that, after the removal of the swells and rusty tins, no reclamation of any nature will be allowed, did not mean that reclamation might not be had for defects, if they existed at the date of delivery, that could not be so discovered or detected; that it was the duty of the defendant, under the terms of the contract and the law, to deliver to the plaintiff salmon which at the time of delivery was substantially capable, taking the shipment as a whole, of being used for human consumption, and that if the jury should find that the salmon was not at that time substantially of a character that, over and above the percentage of defective cans usually found in goods of that description, was in condition for human consumption, and that the plaintiff could not have ascertained at the time of the delivery that such was its condition except by

opening the cans, the plaintiff is not precluded from recovery for such defects, "and your verdict should be in its favor for the difference between the market value which the salmon would have had at the time of its delivery to plaintiff, had it been of the quality called for, and its actual value as delivered." The court further instructed the jury that, if the salmon as a whole had no value as a merchantable commodity, there would be an entire failure of consideration, and in that event they should return a verdict in favor of the plaintiff for the return of the full purchase price thereof. The court further instructed the jury that, if they found that the salmon was at the time of the delivery substantially equal in quality and condition to the salmon delivered in 1911, their verdict should be in the defendant's favor, but, if they found otherwise on that issue, the plaintiff would be entitled to a verdict for the excess, if any, of market value which the salmon would have had, had the warranty been complied with, over its actual market value in the condition in which it was delivered. The jury returned a verdict for the plaintiff, and assessed its damages in the sum of $1.

Samuel Knight and F. E. Boland, both of San Francisco, Cal., for plaintiff in error.

Otto Irving Wise, Wise & O'Connor, and Richard S. Goldman, all of San Francisco, Cal., for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). [1] The plaintiff contends that the verdict and judgment are contrary to the evidence and to the court's instructions. The assignments of error on which the contention is based are that the verdict is contrary to the evidence, in that the evidence shows that the salmon here involved was unfit for human consumption, and that there was an utter failure of consideration for the money paid by the plaintiff, and that the verdict and judgment were contrary to the evidence, in that the evidence showed that the plaintiff was damaged in a sum exceeding the amount paid as the purchase price. Those assignments present to us nothing for review, since this court cannot weigh the evidence, and determine whether the verdict was contrary thereto; there having been no request that the jury be instructed to return a verdict for the plaintiff on the ground of absence of any evidence to sustain a contrary verdict. Our province on a writ of error is limited to the review of errors in law committed by the trial court. We have nothing to do with the evidence, further than to consider its relevancy to rulings of that court to which exceptions have been duly reserved. "An assignment of errors cannot be availed of to import questions into a cause which the record does not show were raised and passed on in the court below." Missouri Pacific Ry. v. Fitzgerald, 160 U. S. 556, 575, 16 Sup. Ct. 389, 393 [40 L. Ed. 536]; Mercantile Trust Co. v. Hensey, 205 U. S. 298, 306, 27 Sup. Ct. 535, 51 L. Ed. 811, 10 Ann. Cas. 572; Federal Mining & Smelting Co. v. Hodge, 213 Fed. 605, 130 C. C. A. 197; Dinet v. Rapid City, S. D., 222 Fed. 497, 138 C. C. A. 93; J. H. Lane & Co. v. Maple Cotton Mills, 226 Fed. 692, 141 C. C. A. 448; Goelet v. Matt J. Ward Co., 242 Fed. 65, 155 C. C. A. 9.

[2] Error is assigned to the refusal of the court below to instruct the jury that if they should find that a substantial part of the salmon was decomposed, or in process of decomposition, at the time when it was brought to San Francisco and delivered to plaintiff, that the sale

was void, on the ground that by the federal Food and Drugs Act, and by the act of the state of California of similar nature, the importation into the state of adulterated food is prohibited, and that if the jury should find that a substantial part of the salmon in question was decomposed when delivered to plaintiff, and that the plaintiff received the same in ignorance of its true condition, then the plaintiff is entitled to a verdict for the amount paid by it for the salmon, and that, in view of the statutes before mentioned, the plaintiff could not be compelled to accept salmon which was adulterated within the meaning of those acts, even if plaintiff failed to inspect the same before receiving delivery, and that, if the jury should find that the salmon delivered was not substantially equal to the 1911 pack of the Archer brand, then the defendant has failed to comply with the contract, and the plaintiff is entitled to recover the excess, if any, of the value which the salmon would have had at the time to which the warranty referred, had the warranty been complied with, over the actual value of the salmon at that time; that the jury was not concerned with the determination of the question whether or not do-over salmon is an article of commerce that must be treated with suspicion; that the contract warranted that the salmon in question, no matter what the general character or reputation of do-over salmon had been, would conform to the standard of the pack of the same brand of the previous year; and that the question for the jury was whether the pack of 1912 delivered to plaintiff was equal in quality to the pack of the same brand of 1911. The answer to these assignments is that the court in substance gave the requested instructions, as will be seen by reference to the foregoing statement of the case.

[3] It is assigned as error that the court refused to instruct the jury that, even in the absence of implied warranty and opportunity to inspect as to quality, it was the duty of the defendant to furnish salmon that was at least merchantable or salable, and capable of being used, the presumption being that both parties to the contract were acting honestly, and refused to instruct as follows:

"So that upon this issue, after considering all the evidence, if you find therefrom that the salmon received by the plaintiff was worthless and unfit for the purpose for which it was purchased, and was incapable of being used for human consumption, it will be your duty to return a verdict for the plaintiff for the amount paid for this salmon, with interest to the present time."

The difficulty in the way of giving that instruction was that a considerable portion of the goods so received by the plaintiff was fit for use, and was salable, and was sold for $3,940, of which the plaintiff received and retained at least the net amount of $2,590, all of which was retained by the plaintiff and was not tendered to the defendant, nor was any offer made to rescind the contract. It is not contended that the contract was void at its inception, or that the defendant had knowledge when the goods were shipped that any particular portion of them was unfit for consumption; the evidence being that "do-over salmon was a doubtful commodity," and as plaintiff's own agent testified, one who buys do-over salmon "expects to find a certain percentage bad." It was owing to this fact that such salmon had been

regularly sold at from 40 to 50 per cent. less than salmon which had not been reprocessed.

[4] Error is assigned to the refusal of the court to admit in evidence the judgment rolls of certain proceedings in the federal courts of California, Kentucky, Missouri, and Indiana, wherein, on the libels of the government, portions of the salmon so purchased by the plaintiff had been condemned and ordered to be destroyed as unfit for food. We find no error in the exclusion of this evidence. The plaintiff proved by competent witnesses, and the fact was not denied by the defendant, that the salmon referred to in the suits had been destroyed by the authorities as the result of the suits so referred to. No question was made of the truth of that testimony, and it was clearly unnecessary to burden the record with other evidence to the same effect.

[5] The plaintiff contends that the defendant was by its conduct estopped from basing any defense to the action upon the plaintiff's failure to inspect the salmon before receiving it, and that the court below erred in refusing to charge the jury that if they should find that the defendant misled the plaintiff by leading it to believe that the salmon was edible and as good as the do-over salmon of prior years, and that the plaintiff was thereby induced to omit inspection, and that the salmon did not comply with the representations so made, or with the samples furnished, but was unfit for human consumption when delivered, then the defendant could not assert that the plaintiff was bound to inspect, and could not rely on the defense of its non-inspection, "and your verdict should be for the plaintiff." This request was made under the theory of the fourth count, in which the plaintiff sought to recover damages.

We think the requested instruction was properly denied, for the reason that the evidence in the case was not such as to justify a verdict for the plaintiff on the ground of estoppel. Estoppel in this case must rest upon the theory that the defendant made representations either with fraudulent intent, or so carelessly and negligently as to amount to constructive fraud, and that the plaintiff must have relied thereon to its injury. The only testimony as to the manner in which the samples were selected from the pack of 1912 is that of the defendant's general superintendent, who said that he took only one can from a case, indiscriminately, and did not attempt to pick out any particular cans for sample purposes, and that the samples from external appearance and weight were the same as the others. There is no evidence that the samples were submitted by the defendant, or received by the plaintiff, as furnishing evidence to the plaintiff of the quality and condition of the 5,000 cases so purchased. The plaintiff's own evidence is that the samples were obtained for issuance to its customers for purposes of resale, that the defendant was asked to send samples for that purpose, and that 2 cases were sent at the plaintiff's expense. And although the plaintiff's manager of its canned goods department testified that he opened not less than a dozen tins out of the 144 tins so sent, and that the condition of those tins was very satisfactory, that fact was not of itself sufficient to justify the jury in reaching the conclusion that the samples sent were not fair samples of

the pack. One of the plaintiff's witnesses testified that about two months prior to the trial he opened 417 tins of the 2,100 cases in the warehouse at San Francisco, avoiding the swells and rusty tins, and found about 30 per cent. bad. Another witness for the plaintiff testified:

"We expected to find some bad cans of salmon in do-over grades in all lots, and in other lots we find very few, sometimes more. It is impossible to state the average number of bad cans that are found in a shipment of do-over salmon. I have seen it run as high as 60 per cent."

[6] It is suggested that the court below erred in not setting aside the verdict and ordering a new trial. It is well settled that in the United States courts the refusal of the trial judge to set aside a verdict or grant a new trial is not subject to review. In Great Northern Ry. Co v. McLaughlin, 70 Fed. 669, 17 C. C. A. 330, we held that a court of error cannot review evidence to determine the correctness of a verdict, saying:

"The relief from such mistakes, if any are made, is to be sought in applications to the trial court for a new trial"

—and citing Mills v. Smith, 8 Wall. 32, 19 L. Ed. 346, where the court said:

"This court have no right to order a new trial because they may believe that the jury may have erred in their verdict on the facts. If the court below have given proper instructions on the questions of law, and submitted the facts to the jury, there is no further remedy in this court for any supposed mistake of the jury."

We find no error. The judgment is affirmed.