Argued 18 October, decided 4 December, 1905.

### GELDARD *v.* MARSHALL.

83 Pac. 867, 84 Pac. 803.

MASTER AND SERVANT—RESPONSIBILITY FOR USE OF METHODS AND APPLIANCES—CUSTOM OF THE BUSINESS.

1. Where an employer intrusts to the employees engaged in the work the duty of selecting from appliances furnished, he is not liable for injuries to a servant caused by negligence of fellow-servants in failing to select safe appliances for use; but, if the master performs the duty of selecting such appliances himself, he is liable for the exercise of reasonable care in making the selection and continuing the use of the appliances selected, and evidence of a custom among employers requiring the workmen to select is immaterial and incompetent.

QUESTION FOR JURY.

2. In an action for injuries to aservant by the breaking of ropes used in lowering a heavy timber, evidence *held* to require submission to the jury of the question whether defendant, who was present directing the work himself, selected the ropes from a supply furnished, or delegated such selection to plaintiff's fellow-servants.

INSTRUCTIONS ON ABSTRACT PROPOSITIONS.

3. Instructions to juries should be limited to the consideration of questions involved in the case on trial, and irrelevant and immaterial questions should not be submitted to the jury.

For example: In an action by a servant against his master growing out of an injury caused by the breaking of a rope with which timbers were being lowered, an instruction that if plaintiff knew the rope broke on account of its weak and defective condition the day before he was injured, and knew that defendant nevertheless continued to use it, he assumed the risk of injury from the defective rope, was error, where, though the plaintiff testified that he knew the rope broke the day before, there was no evidence that the plaintiff knew why the rope broke, or saw it break, or that he knew that the rope used on the day of his injury was the same which had broken the day before.

From Multnomah : ARTHUR L. FRAZER, Judge.

Action for damages by Matthew Geldard against J. I. Marshall, resulting in a verdict for defendant, from which plaintiff appeals. The main opinion was written by Mr. Chief Justice WOLVERTON, and after his resignation and retirement, a further opinion on a petition for a rehearing was written by Mr. Chief Justice BEAN.      REVERSED.

For appellant there was a brief over the name of *Williams, Wood & Linthicum*, with an oral argument by *Mr. Stewart Brian Linthicum*.

For respondent there was a brief over the names of *Bronaugh & Bronaugh* and *W. D. Fenton*, with an oral argument by *Mr. Jerry England Bronaugh*.

MR. CHIEF JUSTICE WOLVERTON delivered the opinion.

This is a second appeal by plaintiff in this action, he having failed to secure a verdict and judgment, of which he complains. The facts developed at the trial are substantially the same as those appearing at the former trial. The statement thereof as formerly made (43 Or. 438, 73 Pac. 330) will therefore suffice for the present.

The pivotal, and, as we have concluded, the vital, question impending, arises upon the defendant's attempt to

establish the existence of an alleged custom between the master and his workmen, whereby, the master having furnished suitable appliances, the workmen are required to make the selections therefrom for present use, and that for making improper or unfit selections, which conduce to an injury, the master is not liable. The nature of the alleged custom is inferable from certain questions put to witnesses Griffith and Bridges, and also from others put to Marshall, the defendant, and his answers thereto. Griffith was asked:

"What would be the custom of using a rope of that kind, as to who should call attention to the fact as to whether or not the rope was sufficient to stand the use?"

And again:

"What would be the custom of an ordinarily prudent man engaged in that business, where a supply of ropes are furnished and on hand from which selections could be made by the servants in charge, in using a rope of that kind, as to who should call attention to the fact as to whether or not the rope was sufficient to stand the use?"

Bridges was asked:

"What is the custom, among reasonably prudent men engaged in your business, as to who should look out for the ropes when a number of ropes are accessible?"

And Marshall was asked:

"What arrangements, if any, were made for the replacing of rope which became defective?"

He answered:

"There was plenty there to pick from. It was understood, if a man was handling the ropes, the man looked at the rope he was using, and if there was anything wrong with it—"

Here was an interruption, and later the following question was propounded:

"What is the general custom, in work of that kind, as to replacing defective ropes?"

47 OR.——18

To which the witness answered, over objection :

"In this city, wherever a man goes to work with a rope, he is supposed to look at the ropes and pick one out to suit himself, if there are ropes there, and if there is any thing wrong with the rope he leaves it, and reports it to the party that supplies the ropes, if there is no other rope there. It is just like making a scaffold. When a man is putting up a scaffold, one man for another, the man going out on the scaffold looks to see whether the scaffold is safe."

1. An analysis of these questions indicates that the defendant was endeavoring to establish two supposed customs, or, rather, perhaps, two phases of one custom ; one being as to whose duty it was, as between master and servant, to call attention to the fitness or unfitness of the rope for the use, and the other as to whose duty it was to make selections from rope that had been provided by the master for use as needed. But did the conditions call for inquiry touching any custom ? Or, rather, was it not a mere matter of inquiry respecting the primary and correlative duties and responsibilities of master and employee, to be ascertained under the conditions and circumstances then existing ? There was evidence tending to show that the defendant was present with the workmen, and was himself directing the work, and that there was plenty of rope provided from which to make selections when needed. It does not appear, however, who made the selection of the particular rope then in use, although there is evidence from which it is inferable that the defendant knew or ought to have known of its condition at the time. Now, the simple question is, did the responsibility of the selection and continued use of this rope rest with the defendant, or was it a duty that devolved upon the workmen ? The question is, under the evidence as we view it, a mixed one of law and fact. It will be remembered that the plaintiff was not using the rope at the time of his injury, but

was employed in another service, so that it becomes the measure of a duty of a coemployee in the premises. We said in *Robinson* v. *Taku Fishing Co.*, 42 Or. 537, 541 (71 Pac. 790): "When the selection of materials or the adaptation or construction of appliances to suit them to the work in hand is such as is within the scope of the employment, and may be properly left to the workmen in their capacity as such, and is so left to them by the master, he is relieved of responsibility for their negligence, and whether a particular case falls within the duty of the master or that of the employee becomes a mixed question of law and fact, to be submitted to the jury as to the fact under legal rules, its determination depending upon the facts of the case." In the nature of things there are certain duties that a master may well leave to the discretion and judgment of his employees, or he may himself act in the discharge of them. If he does the latter, he is responsible for his negligence committed in such discharge. If, however, he intrusts the duty to his employees and they act negligently in the premises, their negligence cannot be imputed to the master, and thus a master would not rest accountable for the negligence of a fellow-servant.

Thus, in *Brady* v. *Norcross*, 172 Mass. 331 (52 N. E. 528), an action to recover damages for an injury received from a fall occasioned by the giving way of a temporary staging upon which plaintiff, one of the workmen, was engaged in the course of his employment, it was stated as a rule of law applicable in the case that, "if the plaintiff's employers furnished sufficient quantities of suitable materials for staging, employed suitable workmen, and did not themselves undertake the duty of furnishing the staging as a structure, but only of supplying materials and labor by which it might be built and from time to time adapted to the work, and if the duty of furnishing or adapting the staging as an appliance for use in the work of finishing

the room was intrusted to or assumed by the workmen themselves, within the scope of their employment, the employers are not answerable to the plaintiff for his injury"; but that, "on the other hand, if the staging was furnished by the employers as a completed structure, or if they themselves supervised and directed its construction, or if, relying upon its construction by their workmen for themselves, the employers negligently failed to provide suitable and sufficient materials, or negligently hired incompetent workmen, the employers might be answerable to the plaintiff." Upon the second appeal (174 Mass. 442, 449, 54 N. E. 874), the court say: "Without reciting the evidence in detail, it is sufficient to say that the questions whether the plaintiff was in the exercise of due care, whether there was negligence in the care of the staging, whether that negligence, if any, was attributable either to Douglas or to Smith, and whether either or both of them was a person whose chief duty was that of superintendence, and to whom as a part of that duty the care of this staging was intrusted by the defendant, seem to us to be upon the evidence questions of fact for the jury, and not of law for the court." So it is if a person is employed to do a piece of work and in doing it is to furnish his own appliances, or if he assumes to select and adapt the necessary appliances in order to a prosecution of the work, the employer could not be held liable for his acts of negligence in that regard. The duty would constitute a part of his engagement. Neither could a fellow-servant hold the employer responsible in that particular, if the workmen themselves were competent in the service.

A pertinent example is instanced in *Robinson* v. *Blake Mfg. Co.*, 143 Mass. 528, 533 (10 N. E. 314), which supposes that the work to be done was the moving of a heavy substance, requiring the use of a simple fulcrum and lever, and the employer's foreman in charge of the work should

be left to provide them at the place where the work was to be done, and he should take a common stone for the fulcrum and a scantling or a rail from a neighboring fence for the lever, and the stone should roll or the lever break, entailing injury to a workman, and from which it is deduced that the selection of the materials and appliances was a part of the work to be done and not within the implied duty and undertaking of the employer. In the case alluded to, the agent of the defendant, who employed plaintiff and others to assist him in taking out an old condenser and putting in a new one, inquired of plaintiff if he had any blocking, to which he replied that he had, and he was directed to get it, but in using it it proved to be the cause of the accident complained of; and it was held that, in view of the circumstances disclosed and the nature of the work to be done, the place of its execution, and the character of the means and appliances required to aid the workmen, it was a question for the jury to determine whether, in the absence of any express contract upon the subject, the duty according to the understanding of the parties rested upon the defendant or upon those who should undertake to do the work.

These cases are illustrative of the principles which we are impressed, govern in the present instance, and we will cite still another: *Great Northern Ry. Co.* v. *McLaughlin*, 70 Fed. 669 (17 C. C. A. 330). The injury was caused by a steel rail falling upon plaintiff while he was engaged with others in loading it upon a car. One Johnson, who was foreman of the yard, hired and discharged the workmen and directed their work. In the absence of plaintiff, who was directed to help with the work, the foreman selected some skids to be used in the loading from a number lying in the yard. The workmen suggested to the foreman that one of them was too short, and was, therefore, unsafe, and objected to its use; but the latter further

examined it and directed the workmen to proceed with its use. The plaintiff, having subsequently returned to his work, knowing nothing of the controversy about the skid or its condition, was injured, as above indicated, because of its unsuitableness; and it was held that whether Johnson was acting as a vice principal, and whether plaintiff was injured through the negligence of his fellow-servants, or through a risk assumed by him, or through the negligence of the railway company, were for the jury. In the course of the opinion the learned judge who announced it assumed that the duty of selecting and placing the skids might with propriety have been left with the workmen. If such had been the case the company would not have been liable for the negligence of the workmen in using the objectionable skid. In further course of the opinion it is said: "The controlling question often turns more upon the character of the act performed than on the title of the officer or agent of the master, and of the relations of the workmen to each other. When Johnson's attention was called by the workmen to the fact that the skids were of unequal length and unsafe, it was his duty, in relation to his position with the railway company, to have either procured other and safe skids, or directed the workmen to do so."

2. From these authorities it was for the jury to determine, under the testimony of the case at bar, whether the defendant was directing the work, and whether, having furnished a quantity of rope, if such was the case, he himself assumed the duty of making the selection of such as was needed in the work. If he did these things and was careless, or did not use reasonable caution and prudence in making the selection, he would be liable; and, further, if he had made a proper selection, having assumed that duty, and the rope subsequently became unsafe by use, and he was made aware of the condition, or should have

ascertained or known of it by proper precaution and foresight, and failed to supply another, he would yet be responsible. But if, on the other hand, he left the selection entirely to the workmen, and they were acting in the discharge of that duty, then the defendant would not be responsible for their negligent act in that particular, or if the rope became defective by reason of use, and the defendant was not aware of it, but the workmen were, and continued in the use of it without making another selection, the jeopardy would have been theirs, and a fellow-servant engaged in the same service, though not intrusted with making the selection, would have the same responsibility. These are all matters for the jury under the evidence. Now, what room was there for the supposed custom or customs sought to be established? The matters sought to be determined were of fact, and not of custom. It was inquired what would be the custom as to who should call attention to the fact as to whether or not the rope was sufficient to stand the use. The inquiry pertains not to a custom. If a workman saw that a rope or an appliance in use was defective or unsafe, it was his duty, not suggested by any custom or usage, but for self-protection, and the protection of his co-laborers, to call prompt attention to the fact or supply the remedy, if within his authority; otherwise, by a continuation in the service with the defective appliance, he assumed the risk of accident. It is a mere question of duty, not regulated by custom, unless you raise custom to the dignity of law, and then the inquiry would be as to the rule of law, which would be for the court to ascertain, without inquiry as to the fact. And, again, it was inquired what would be the custom among reasonably prudent men engaged in such business as to who should look out for the ropes when a number are accessible.

From the rules of law governing in the premises, as we have heretofore ascertained them to be, it is perfectly apparent that this matter of inquiry was not of a custom, but of a fact. If the employer intrusted the duty of selecting the ropes from a supply that he had furnished to the workmen, then the responsibility of selection and having in use a safe rope would rest with the latter; but if, on the other hand, he acted in the discharge of that duty, and was present to oversee and direct the work and to observe and determine as to the fitness of the appliances, then the responsibility rested with him to have in use a suitable and safe rope, and nothing could relieve him therefrom, except that he had used reasonable prudence and precaution in making the selection and continuing in the use thereof. Common prudence is not measured by custom or by rule, but by the exigencies of the occasion, which is solvable by the facts and is for the jury to determine. The effect of allowing the alleged custom to be proven was, therefore, to take from the jury questions material to the controversy, namely, whether the master was in personal charge and hence supervising the work, or, having provided suitable appliances — that is, rope suitable and safe for use — the workmen were left to make the selection and to see to its condition while in use. The circuit court was in error, therefore, in admitting the proofs, and for that reason alone the judgment must be reversed, and the cause remanded for such further proceedings as may seem appropriate, not inconsistent with this opinion.

Other questions were presented, but the conclusion reached renders it unnecessary that we should consider them now.                                        REVERSED.

Decided 3 April, 1906.

ON MOTION FOR REHEARING.

MR. CHIEF JUSTICE BEAN delevered the opinion.

3. The defendant does not ask for a rehearing upon any question discussed in the opinion, but, in view of a new trial, he requests the court to pass upon the assignment of error, based on the giving of an instruction to the effect that if the plaintiff knew the rope broke, on account of its weak and defective condition, the day before he was injured, and knew that defendant, nevertheless, continued to use it, he assumed the risk of injury from the defective rope by continuing to work with the persons using such rope, and cannot complain, or recover damages if he was injured on account thereof. The objection to this instruction is that there was no testimony upon which to base it. The plaintiff testified that he knew the rope broke while a brace was being lowered the day before he was injured, but he did not know why the rope broke, or did not know whether it was the same rope as the one being used at the time of his injury. The bill of exceptions recites that all the testimony as to any knowledge on the part of the plaintiff as to why the rope broke and as to whether such rope was being used at the time of his injury is that of plaintiff and that "no evidence was given by any one that plaintiff knew why the rope broke before his injury, or saw it break, or that he knew that the rope used on the day of his injury was the same rope which had broken the day before." It would seem, therefore, from the statement in the bill of exceptions that the instruction complained of was entirely outside the evidence, and, therefore, should not have been given, for it is error for a trial court to give instructions upon abstract propositions of law not applicable to the facts in evidence, however correct in themselves: *Glenn* v. *Savage*, 14 Or. 567 (13 Pac. 442); *Woodward* v. *Oregon*

*Ry. & Nav. Co.*, 18 Or. 289 (22 Pac. 1076); *Pearson* v. *Dryden*, 28 Or. 350 (43 Pac. 160). The petition is denied.
REVERSED: REHEARING DENIED.

---

Decided 2 January, 1906.